FILED
2013 Mar-18  AM 11:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **JIMMY O. ARMSTRONG,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 6:11-CV-4172-VEH |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **ACTING COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| Defendant. | ) |

---

## MEMORANDUM OPINION[1]

Plaintiff Jimmy O. Armstrong ("Armstrong") seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").

---

[1] The court recently became aware that Carolyn W. Colvin was named the Acting Commissioner of the Social Security Administration on February 14, 2013.  *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on Mar. 13, 2013).  Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."  Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

Armstrong timely pursued and exhausted his administrative remedies available before the Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g) of the Act.  The court has carefully considered the record and, for the reasons which follow, finds that the decision of the Commissioner is due to be **AFFIRMED**.

## FACTS AND PROCEDURAL HISTORY

Armstrong was born in 1953 and was a fifty-three (53) year old male on October 1, 2006, the alleged onset date.  (R. at 68.)  Armstrong has a high school education.  He has worked as a saw handler, floor hand, and forklift operator.  (R. at 36–37.)   Armstrong primarily complains of disabling pain resulting from rheumatoid arthritis.

The procedural history of this case is lengthier than most.  The Commissioner initially denied Armstrong's application for disability benefits on March 30, 2007.  (R. at 94.)  Armstrong timely requested a hearing before an administrative law judge ("ALJ").  (R. at 99.)  The ALJ held the first hearing in this case on January 13, 2009.  (R. at 42.)  The ALJ denied Armstrong's claim on February 18, 2009. (R. at 72.)  In his decision, the ALJ incorrectly identified Armstrong's date of last insured as December 31, 2007.  In fact, Armstrong's date of last insured is December 31, 2008.

Armstrong requested review by the Appeals Council.  (R. at 108–09.) Neither his request for review or his brief to the Appeals Council identified the ALJ's error regarding his date of last insured.  (R. at 108–09, 417–20.) Nonetheless, the Appeals Council remanded Armstrong's claim for further consideration.  (R. at 73.)  Specifically, the Appeals Council instructed the ALJ to consider the opinion of a treating physician and pose a proper hypothetical to the vocational expert.  (*Id.*)

Following the remand from the Appeal's Council, the same ALJ held a second hearing on May 31, 2011.  (R. at 24.)  Thereafter, the ALJ denied Armstrong's claim.  The ALJ's second decision addressed the issues identified by the Appeals Council, but again, incorrectly identified Armstrong's date of last insured as December 31, 2007.  (R. at 83.)

Armstrong appealed the ALJ's second decision to the Appeals Council.  (R. at 14.)  As with his previous appeal, Armstrong did not mention the ALJ's error regarding his date of last insured.  (R. at 14, 238–42.)  This time, the Appeals Council denied review.  (R. at 1.)  Therefore, the decision of the Commissioner became final on October 31, 2011.  (*Id.*)  Armstrong then brought this action.

## **STANDARD OF REVIEW**[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, "because no presumption of validity attaches to the [ALJ's] determination of the proper legal standards to be applied." *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the

---

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  *See Cornelius v. Sullivan*, 936 F. 2d 1143, 1145–46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for DIB and SSI as well as establish his entitlement for a period of disability, a claimant must be disabled as defined by the Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] 12 months."  20 C.F.R. § 416.905(a).  To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 416.908.

The Regulations provide a five-step process for determining whether a

---

[3] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, as current through March 7, 2013.

claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i–v). The Commissioner must determine in sequence:

> (1)  whether the claimant is currently employed;
> (2)  whether the claimant has a severe impairment;
> (3)  whether the claimant's impairment meets or equals an impairment listed by the Secretary;
> (4)  whether the claimant can perform his past work; and
> (5)  whether the claimant is capable of performing any work in the national economy.

*See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2010); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, [he] will automatically be found disabled if [he] suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform [his] work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993), *overruled in part on other grounds*, *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

At Step One, the ALJ found that Armstrong had not engaged in substantially gainful activity from his alleged onset date through his date of last

insured, which the ALJ identified as December 31, 2007. (R. at 83.) At Step Two, the ALJ found that Armstrong had the following severe impairment: arthritis. The ALJ found that Armstrong's depression and panic disorder are non-severe impairments because they "do not significantly affect his ability to perform work related activity." (R. at 83.) Additionally, the ALJ explained that, though Armstrong had consistently complained of rheumatoid arthritis, there was no little, if any, objective evidence to support his allegations. (R. at 84–85.)

At Step Three, the ALJ determined that Armstrong does not meet or equal a medically listed impairment. (R. at 86.) Before proceeding to Step Four, the ALJ determined Armstrong's residual functioning capacity ("RFC"). The ALJ found that Armstrong could perform the full range of medium work. (R. at 86.)

At Step Four, the ALJ found that Armstrong could perform past relevant work as a floor hand laborer. Because Armstrong could perform his past relevant work, the ALJ found he is not disabled.

## **ANALYSIS**

This court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574–75 (11th Cir. 1986)). In contrast to factual findings, however,

the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574–75); *Martin*, 894 F.2d at 1529 ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "<u>responsibility to scrutinize the record in its entirety</u> to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (emphasis added) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4]

Armstrong makes three arguments on appeal. First, he contends that the ALJ erred in determining his date of last insured, and that this error alone warrants a remand. Second, Armstrong contends that the ALJ failed to give proper weight to the opinion of his treating physician, Dr. Jeffery Long. Finally, Armstrong contends that the ALJ's conclusion that he can perform medium work is not supported by substantial evidence. The court will address each argument in turn.

### A. Armstrong's Date of Last Insured

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

It is undisputed that the ALJ's decision incorrectly identifies Armstrong's date of last insured as December 31, 2007. In fact, Armstrong's date of last insured was December 31, 2008, a full year later. The parties disagree, however, about the consequences of this error. Armstrong contends this error warrants a remand. The Commissioner, on the other hand, contends that this error is a mere scrivener's error or that this error did not effect the substance of the ALJ's decision. As explained below, the court agrees with the Commissioner.

The Commissioner's decision is subject to harmless error review. *See, e.g.*, *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error rule in a social security case); *see also* Fed. R. Civ. P. 61. The purpose of the harmless error rule is to avoid the waste of time and preserve judicial resources. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). If an error did not effect a party's substantial rights, then the error is harmless and should be disregarded. *See id.*; *see generally McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553–54, 104 S. Ct. 845, 848–49 (1984). A scrivener's error is harmless when the ALJ's decision would be the same despite the error. *See Jones v. Astrue*, 821 F.Supp. 2d 842, 848 (N.D.Tex. 2011).

In this case, the ALJ's error was harmless because it did not affect Armstrong's substantial rights. Armstrong contends the ALJ's error required him

to establish his disability a full year before he became ineligible for benefits.  Yet, the ALJ clearly considered Armstrong's medical evidence up to and beyond December 31, 2007, the date the ALJ listed as Armstrong's date of last insured.  (R. at 84–85.)  For example, the ALJ considered Dr. Jeffery Long records from March 2008.  Dr. Long opined that Armstrong could not do any walking, standing, bending, or lifting due to "rheumatoid arthritis, osteoarthritis, and degenerative joint disease of the lumbosacral area."  (R. at 84–85.)  Dr. Long further opined that Armstrong would never be able to return to work.  (R. at 85.)  The ALJ ultimately rejected Dr. Long's opinion for good cause.  Because the ALJ considered and rejected Dr. Long's opinion from March 2008 on its substance rather than its date, a remand to consider this evidence would be futile.

     In addition to Dr. Long's opinion, the ALJ considered other medical records from before and after December 31, 2008.  For example, the ALJ considered records from the VA Medical Center in Birmingham from May 24, 2006 to October 6, 2009.  The ALJ noted these records show that Armstrong complained of back pain and shoulder pain.  But, the records show no evidence of rheumatoid arthritis in Armstrong's hand x-rays and lab work.  (R. at 85.)  Additionally, these records showed Armstrong's vertebral disc heights in the lumbosacral region were "preserved."  (R. at 85.)

The ALJ also considered a CT scan conducted at Lakeland Community Hospital in May 2008. The scan showed "multilevel degenerative disc disease with narrowing of the disc spaces and anterior and posterior spur formation at C3-4, C4-5, C5-6 and C6-7." (R. at 85.) "However, no fracture or destructive lesion was seen." (R. at 85.) Armstrong has not identified other medical records from January 1, 2008, to December 31, 2008, which the ALJ failed to consider. Thus, it appears the ALJ gave due consideration to Armstrong's medical records up to his actual date of last insured—that is, December 31, 2008. More important, Armstrong has not explained how the ALJ's failure to consider any evidence from this period prejudiced his claim. Because the ALJ considered all the relevant medical evidence through Armstrong's actual date of last insured, the ALJ's error is harmless.

Moreover, other evidence in the record suggests that the ALJ's error is a mere scrivener's mistake and that the ALJ used the correct date of last insured in making his decision. First, at the first administrative hearing, the ALJ specifically noted that Armstrong's date of last insured was December 31, 2008. (R. at 50.) Armstrong's attorney pointed out to the ALJ that December 31, 2008, was "just a few days ago." And, the ALJ issued his opinion only a month later, on February

18, 2009.  (R. at 72.)  Thus, it appears the ALJ was fully aware of Armstrong's actual date of last insured.

Second, after the ALJ's initial denial, the Appeals Council reversed and remanded Armstrong's case so that the ALJ could consider the medical records of Dr. Jeffery Long.  (R. at 73–76.)  The Appeals Council identified Dr. Long's records as Exhibit 2D, which includes medical records from June 2006 to March 2008.  (R. at 73–76, 146–149.)  Because the Appeals Council specifically directed the ALJ to consider medical records from a period after December 31, 2007, it seems unlikely that the ALJ would have required Armstrong to establish his disability before that date.

Finally, Armstrong never mentioned the ALJ's error at his second administrative hearing.  Though Armstrong did not waive this issue by failing to raise it before the ALJ, *see Sims v. Apfel*, 530 U.S. 103, 112, 120 S. Ct. 2080, 2086 (2000), his failure to point out the error at the hearing suggests that Armstrong understood that the ALJ was using the correct date.  At the very least, Armstrong's omission at the second hearing suggests that he did not believe this error was significant.  This conclusion is further supported by the fact that Armstrong had two opportunities to point out this error to the Appeals Council, but never did so.

For the foregoing reasons, the court believes the ALJ used the correct date of last insured in making his decision. But, even if the ALJ did not use the correct date of last insured, this error is harmless. Thus, the decision of the Commissioner is due be **AFFIRMED**.

### B.     The Opinion of Dr. Jeffery Long

Armstrong contends that the ALJ failed to properly consider the opinion of Dr. Long, one of his treating physicians. (Doc. 7 at 15.) Ordinarily, the ALJ must afford substantial weight to the opinion of a treating physician "unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F. 3d 1436, 1440 (11th Cir. 1997) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). "Good cause" exists when "the doctor's opinion [is] not bolstered by the evidence, or where the evidence support[s] a contrary finding." *Id.* (citing *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir.1987) and *Sharfarz v. Bowen*, 825 F.2d 278, 280–81 (11th Cir.1987)). Additionally, good cause exists when a doctor's opinion is "conclusory or inconsistent with [his] own medical records." *Id.* (citing *Jones v. Dep't of Health & Human Servs.,* 941 F.2d 1529, 1532–33 (11th Cir.1991) and *Edwards v. Sullivan,* 937 F.2d 580, 583 (11th Cir.1991)). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Id.*

In this case, Dr. Long opined that Armstrong has rheumatoid arthritis, and that this condition significantly limits his ability to walk, stand, bend, and lift. (R. at 146–49.) In fact, Dr. Long limited Armstrong to a sedentary life style and opined that he would never return to work. (R. at 147–49.) The ALJ found Dr. Long's opinion was conclusory and inconsistent with other evidence. Substantial evidence supports the ALJ's finding.

First, Dr. Long's diagnosis of rheumatoid arthritis is not supported by objective medical evidence. Dr. Long stated that he based his diagnosis on bloodwork and X-rays. (R. at 146.) However, Dr. Long's records do not contain these tests.

Conversely, the record contains a clear statement from Dr. Russell Tarver, a primary care physician at the Birmingham Veterans Affairs Medical Center, that Armstrong's rheumatoid factor was negative. (R. at 464.) Additionally, Dr. Tarver noted that Armstrong showed "no radiographic signs of an inflammatory arthritis on either his hand films or wrist films." (*Id.*) Based on this evidence, Dr. Tarver said, "I find nothing to support a diagnosis of rheumatoid arthritis." (*Id.*) Moreover, Dr. Tarver conducted his examination in July 2006 (R. at 463), only one month after Dr. Long diagnosed Armstrong with rheumatoid arthritis. (R. at 146.)

Second, the record contains no evidence that Armstrong ever saw a rheumatologist about his condition. Although Dr. Long states that he referred Armstrong to a rheumatologist, Dr. Long does not say who that was nor whether Armstrong actually saw him. (R. at 146.) Armstrong has not submitted any records from a rheumatologist. And, Dr. Tarver expressly noted that, based on Armstrong's tests results, the Birmingham Veterans Affairs Medical Center's rheumatology department declined his request for a consultation. (R. at 464.)

Given Dr. Tarver's report and the absence of objective medical evidence to support Dr. Long's diagnosis, the ALJ's decision to discredit Dr. Long's opinion was reasonable. And, after the ALJ had discredited Dr. Long's diagnosis, he was justified in discrediting Dr. Long's opinion about Armstrong's ability to work. Because the ALJ's finding is supported by substantial evidence, it is due to be **AFFIRMED**.

C.   **Armstrong's Ability to Perform Medium Work**

Finally, Armstrong contends that the ALJ's finding that he can perform medium work is "contrary to the evidence and . . . a conclusion that no reasonable person would reach." (Doc. 7 at 16.) The court disagrees.

A disability claimant bears the burden of establishing his inability to perform his past relevant work. *See Jones v. Bowen*, 810 F.2d 1001, 1005 (11th

Cir. 1986).  At the second hearing before the ALJ, a vocational expert ("VE"), Mrs. Patsy Bramlett, testified that Armstrong could return to his past relevant work.  (R. at 39.)  The VE based her testimony on the consultive evaluation performed by Dr. Boyd Harrison.  (*Id.*)  Because Dr. Harrison placed no physical restrictions on Armstrong, she concluded that he could physically perform his past relevant work.  (R. at 39.)[5]  The VE also said that, if the ALJ credited Dr. Long's opinion, then Armstrong would be unable to work.  (R. at 39–40.)

As noted above, the ALJ discredited Dr. Long's opinion.  After eliminating this testimony, there is no evidence in the record which demonstrates that Armstrong is physically unable to do his past relevant work.[6]  Thus, Armstrong has not met his burden of establishing his disability.  Additionally, it was reasonable for the ALJ to rely on Dr. Harrison's physical assessment, which placed no physical restrictions on Armstrong.  Finally, the VE's testimony further supports the ALJ's finding that Armstrong can perform medium work.  Because the ALJ's finding is supported by substantial evidence, his finding is due to be **AFFIRMED**.

---

[5] The ALJ also considered Armstrong's mental impairments and concluded they were not severe. (R. at 85–86.) At any rate, Armstrong has not challenged the ALJ's mental RFC assessment.

[6] The ALJ also discredited Armstrong's subjective testimony about his symptoms. (R. at 87.) Armstrong does not challenge this portion of the ALJ's opinion.

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is due to be, and hereby is, **AFFIRMED**. A separate final judgment will be entered.

**DONE** and **ORDERED** this the 18th day of March, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge